Our next case we'll hear this morning is Hanback v. DRHI, Inc. Mr. Pierce, whenever you're ready, we'll hear from you. Good morning, Your Honors, and may it please the Court, Stephen Pierce here on behalf of the appellant, William Hanback. At issue here today is Mr. Hanback's appeal of the trial court's dismissal on a 12b6 motion filed by the appellees of his claims filed in December of 2014. Mr. Hanback brought forth a complaint originally in the certain court for Fairfax County, Virginia, and it was removed by the appellees' Eastern District of Virginia. Mr. Hanback's complaint had two causes of action. The first was for declaratory relief, a declaratory action under Virginia law, and the second for breach of contract. Now, obviously, once the case was removed to federal court, the declaratory action case was covered under federal law instead of the state statute, but they're routinely held to mean basically the same thing and have the same standards, so it's not that important of a distinction. This case has a long litany of litigation between the parties revolving around a 2000 contract, land sales contract, whereby Mr. Hanback sold his land in the city of Fairfax to DRHI, one of the appellees, which is the land acquisition subsidiary of the national builder and land developer, DR Horton, also a party to this case. The district court erred in dismissing the two counts against appellees, one for declaratory action and two for breach of contract, and as a brief roadmap, I'd like to start by first addressing the declaratory action count. I don't think you need to do that. It seems to me the declaratory judgment action is not substantive. It is relief, and you need a substantive claim, and I suggest you focus your attention on your breach of contract. That will determine whether you either get a declaratory judgment or damages or whatever. Absolutely, Your Honor. I do think it's important to note a distinction that the breach of contract claim revolves around the 2000 contract, whereas the declaratory action claim revolves around a 2004 decree about the 2000 contract. So while it is based on the 2000 contract, the declaratory action isn't seeking relief that arises specifically from the contract, but rather a declaration of the party's rights under the 2004 decree of the District Court of Fairfax County. Well, with declaratory judgment actions, what we do is to make a declaration about something that will take place in the future. I've never known of one where we make a declaratory judgment with respect to something that took place 10 years ago, more than 10 years ago. Absolutely. So that's why I think another way of saying it, I don't know that you have any right to a declaratory judgment here. You might have some right to some breach of contract claim. Okay, well, I'll move to the breach of contract claim then, Your Honor, and we can circle back to the declaratory action if it arises out of our discussion on the breach of contract. The breach of contract claim was dismissed by the District Court for two reasons. First, based on a statute of limitations argument, and second, on a failure to state a claim argument. And starting first with the statute of limitations argument, the real crux of the issue here is at what time is the breach? And the appellees maintaining the District Court found that when the City of Fairfax said, you can redevelop the land, that was the time. When I would argue, and the contract maintains, that the real triggering date should be when a subdivision plan is approved. And there are very important distinctions. One is just a general redevelopment approval. In concept, this could work. And one is the right of the party to actually build a subdivision. And to preface that a little bit, we need to go back and talk about what happened after the 2000 land sales contract was entered into the party, by the parties. It was originally entered into in June of 2000. And the concept here was that Mr. Hanback was selling his undeveloped land. There was a structure on the property. There was actually two parcels of property. But it was going to be knocked down and developed into, originally the concept was townhouses. And that later changed into single family homes. But at all times, the parties were negotiating the contract. The concept was that Mr. Hanback would be compensated based on the total number of units that the builder could build on the property. As a result, there's actually an amendment to the contract where it specifically, and that's in the papers, where it specifically says that Mr. Hanback will be paid $70,000 per approved lot, or $400,000 for five or less approved lots. And what happened is by the time we got to 2004, when the Circuit Court of Fairfax County entered its order in this case, forcing specific performance, allowing the builder to take the land, essentially force Mr. Hanback to close on the land, the court took recognition of the fact that this redevelopment hadn't occurred, that a subdivision plan had not been approved. And in its order says that Mr. Hanback should be paid $70,000 per unit permitted by his land to be built when a final subdivision plan is approved by the City of Fairfax. Now, the final subdivision plan wasn't approved by the City of Fairfax until January 28th of 2010. So when we're talking about a five-year statute of limitations, for that aspect of the contract, this concept that there's approved lots, and only once the City has said you can build, and only once the subdivision plan has been approved, that didn't occur until January 2010, and this action was filed in December of 2014. The District Court erred when it looked to the date in 2007 when the City said we would be okay with the concept of a redevelopment of this land. In approving a potential development, the City did not do what the order of 2004 required. And Judge Ellis in the lower court noted that there was nowhere in the contract that mentioned this concept of a subdivision plan approval. And that's just not the case. The contract of both Paragraph 6 and Paragraph 15, Section 4, while not necessarily about the same concept of what the compensation should be based on, specifically states triggering dates for actions as being the date... Did the District Court address the limitations issue? The statute of limitations issue? Yes, Your Honor. That was the first reason for dismissing... Oh, that's right. Okay. Okay. So, essentially, the argument here is that the contract is a poor contract. I'll be the first to acknowledge that. But the contract maintains a date that was an out for the developer as of when the subdivision plans were approved. Not when a redevelopment is approved. Not when some rezonings occur. Not when some trees get cut down. It was specific. And that is the language that Judge Klein, in 2004, in the Circuit Court of Fairfax County, tracked when he wrote in his order that when the land was permitted, if the land permitted the redevelopment, and the triggering point for when that would occur or not was when final subdivision plans were approved. And that wasn't until, like I said, January of 2010. So, tell me where in the contract it says that. Okay. There's two references to subdivision approval in the contract. Final subdivision approval. The first reference is in paragraph 6, which is on page 18 of the joint appendix, Your Honor. It specifically outlines that the time of settlement shall take place within 30 days after the approval of final subdivision plans by the City of Fairfax. Now, the court in 2004 in Fairfax County basically said, we're getting rid of that. We're going to force you to closing now because the developer is requesting specific performance of this contract. But in light of the fact that a redevelopment. But that's not all it says, is it? We're 12 months after execution of this contract, whichever occurs first subject to the provisions of paragraph 15 of this contract. Right. Okay. My point, Your Honor. And when did it settle? It didn't settle. The contract was in 2000. It didn't settle until 2004 after judicial action between the parties. When was it 12 months after execution? When was it executed? This contract was executed in June of 2000, Your Honor. So, 12 months after would have been 2001? Yes, Your Honor. Settlement did not occur then. And there was a wide variety of reasons for that, is my understanding. I was not counsel at that time. But when the cause of action came before the Fairfax County Circuit Court in 2004, the question at that time was the developer was seeking specific performance on multiple grounds. And Mr. Hanback was maintaining that multiple aspects of their contractual requirements had not been met. And despite that, the court. Let me ask you, I have some conceptual problems with your claim. Your claim is for breach of a contract. The contract was for the sale of land. The contract closed and the parties paid their monies. Doesn't that end it? I would maintain it doesn't, Your Honor. The contract was specifically supposed to be based on how many units the builder got to build once the city had a final subdivision plan approved. And that hadn't occurred before closing. But where does it say that? You see, it seems to me that it tracks exactly what Judge Niemeyer said. Whatever the settlement was, that was it. That was what lots were available to be paid for at that point. And they paid the money for the lots. And they paid the money for the lots. And, Your Honor, I would disagree with that because the contract contemplates a joint effort towards the rezoning of the property to build more lots than are available by right. I understand, but that leads up to a settlement. But at the settlement stage, that ends the whole development obligations. That ends all the obligations of the contract. They settle. One takes the title to the property, which is two acres, and the other takes the money. And that's really what they had at settlement. And now you're coming back and saying, oh, this contract wasn't fulfilled at settlement. Well, and again, Your Honor, I think I would point to the 2004 decree. Tell me, stick with settlement. What happened? Was the settlement deficient? Your Honor, that isn't necessarily our position, no. I think it's not that the settlement was insufficient in some way, but the judicial decree from the Fairfax County Court said at the time, any subdivision plan submitted by DRHI for the development of the property that this closing is going to entail. But we're not, A, we're not bound by that, and, B, it might be wrong, right? It could be wrong. That interpretation. So what we're looking to is the contract. It seems to me you rise or fall, your obligation, what your client is entitled to with this contract, not with what some court, some state court said in the contract in a case which the state Supreme Court vacated, right? The Supreme Court didn't vacate the case. They vacated the finding of contempt. They vacated the judgment that came from the state case that was finding a contempt order. I understand that. But still, I'm not sure, even if we were, even if it was, let's just stick with the contract for purposes of here rather than that. Basically, this is a contract for the sale of land in payment of compensation. Absolutely. And the compensation is linked to how the land permits that are obtained. Yes, Your Honor. But the payment, there was a closing, and there was a final payment at the closing based on the development progress at that point. And it seems to me that ends the case. I mean, it's a breach of contract for the sale of land. I would disagree and distinguish it only by saying, Your Honor, that it was always the contemplation of the parties that there would be a subdivision. And that contemplation is memorialized in the contract. There may be a subdivision, but when somebody agrees to sell land and another agrees to pay for it, it seems to me, unless you have a contract that intends a separate development contract, but this is just a contract for the sale of property. But the price, if you look at the amendment to the land purchase contract, paragraph one, the price is based on approved lots. And there were no approved lots. There were no approved lots. The city hadn't made any finding yet. Well, if there are no approved lots, then you could have postponed settlement, maybe, but maybe not, because the settlement in the contract was anticipated in a much shorter time. I see I'm out of time, Your Honor, and I'll potentially respond in rebuttal. All right. We'll see you back on rebuttal then. Thank you. All right. Mr. Mains. Thank you, Your Honor. May it please the Court. John Mains on behalf of D.R. Horton, Inc. and D.R. H.I., Inc. The Court has indicated that we are to focus on the breach of contract, and I will do that. When I was reading appellant's brief last night, throughout the brief, the district court judge was accused of not doing his job, not looking favorably on the facts. And I would submit to you that the district court judge, in fact, did his job, and his job is to ignore arguments and unsupported conclusions. And in particular, when it comes to, as in this case, relying on a contract, we go to the contract. And this Court has done that. And I would submit that the Court has grasped the issue that the trial court in state court did not. And that is this. We have a contract that no one has ever declared as ambiguous or hard to interpret. And it has three operative clauses in it that preclude Mr. Handback from continuing his efforts to try and get more money. And I call them the what, the when, and the whether clauses. The what clause, what we pay, is found in paragraph two of the contract, which is on page 16 of the appendix. And that says that the price as of that time was $560,000, or approximately $70,000 per each of the approved lots. Okay, were there approved lots at the time of settlement? Yes, there were. Your colleague says there weren't. I understand that. When we live in a house, that lot is approved for construction. There is what they call by right approval. And that arises from when a jurisdiction prepares its zoning plan and says, in this area you can have so many houses per quarter acre or half acre or one acre, whatever. It wasn't approved for the development that they wanted to do. No. It was approved to build on something. Yes. In the brief, even Mr. Handback acknowledges that at the time that the parties contracted and at the time that we went to settlement, there were five approved lots, five approved lots for his property. Now, we can come in and ask that the court, excuse me, that the jurisdiction rezone so that we can get more lots out of a particular piece of property. And there is an allegation in the lawsuit that, as a matter of fact, we tried to do that. We were the fourth effort by three different parties to try and get higher zoning. We lost. So as you correctly pointed out, Judge Mons, if you go to what I call the when clause, which is on page 18 of the appendix, the time of settlement, it says when we have to go to settlement. And as you also pointed out, what Appellant Handback keeps doing in this particular piece of litigation is he keeps ignoring the second part of the clause, which says that we have to go to settlement within 12 months. But you didn't go to settlement. No, we did not. Your client finally forced it to settlement. That's correct. Now, let me tell you why. We're now going to go to the weather clause, and that addresses the issue of the settlement timing. If you go to page 23 of the appendix, and you will note that that paragraph has to do with conditions of settlement. And what it says is whether DRHI goes to settlement or not depends upon these following factors, 1, 2, 3, and 4. And 4 has to do with the subdivision issue. And if you go down, it says that the contract can be extended for one year, an additional year, in terms of settlement timing if we don't have subdivision approval. And if you go down further, it says, and I will quote, purchaser may extend the term of this contract for a period of one additional year without additional cost. Seller agrees to actively support purchaser zoning and flat applications. As I previously pointed out, we did try that within the period of the contract. We failed. So what did we do? What we did at that point is we waived it. And as a matter of fact, if you go down further, it says that we can elect to waive. Well, you know, all this argument doesn't make sense to me because regardless of what happened before, whether it was approved, whether it was not approved, the contract, by its terms, had defaults based on conditions precedent, based on timing, and so forth. But in fact, in this case, the whole contract is for the sale of 2.14 acres of land for purchase price. And the purchase price was contingent on events. When they get to settlement, they go to a court, and they go to settlement based on that, and they pay X number of dollars for the purchase of the land. The deed is conveyed and the money is transferred. Correct. And we figured it was all over. I can't figure out what survives that arrangement. Nothing survives it. I mean, whatever was a right up to that point was waived by either party. In other words, if you had a right not to sell the land or buy the land, and they had a right to buy the land or not to sell the land, all of those are foreclosed after they close the property. That is absolutely correct, Your Honor. I mean, isn't a contract for a real property end on settlement? Isn't that traditional Hornbook law? Absolutely. And the deed is the conveyance? Absolutely. Absolutely. And the problem is when we, for appellant, when we went to settlement, there was five lots. And therefore, under the contractual scheme, they got the minimum payment of $400,000. There was a two-step scheme, not cumulative but alternative. He could either get $400,000 if he had five or less lots, or he could get $70,000 per lot. I understand, but you're just arguing about whether the settlement was proper. The settlement was proper. Nobody objected. No, I'm not arguing whether the settlement was proper. I think I agree with the court. When the settlement occurred, that was story over, transaction over. The payment, the obligations were determined as of the date of settlement. And as of the date of settlement, there was five lots, and therefore, he got $400,000. And that should have been it. But instead, eight years later, when he sees that there's been an assemblage and more houses put on another piece of property, he says, I want $700,000. Well, he doesn't have a contract for that. No, he doesn't. That's my whole point. Well, I understand that. You know, I may be wrong, but I practiced law and I got it. It was in this area a lot. And I remember oftentimes recognizing that at settlement, the contract became irrelevant at that point once you had a closing. And unless you had an agreement explicitly saying this survives the closing of the settlement, and usually that was done by a separate agreement, but the closing ended the contract, and the transfer of the deed and the money at that time ends it. Now, he's coming back and suing for breach of that contract? That's what he his lawsuit attaches as the contractual obligation, the contract. And then what he says is, well, the decree modified that contract. Well, it may have, but they closed. Well, I agree with that. And I would also submit that the decree did not modify the contract. Well, it doesn't matter. Okay, well, I'm not trying to. I mean, you can have all this history about who struck John, who approved what, whether it was final approval, what lots there were. It was for the sale of property. And it says it right in the very first clauses of the contract and in the supplement. It says this is for the sale of 2.14 acres of property. I agree. And it has a purchase price. And this is a big argument about the purchase price. But the purchase price was paid without objection. On settlements pursuant to a specific performance decree. And if there was an objection, then the person has to refuse to go through with the settlement. That's correct. If there's any other questions, I will answer them. But otherwise, I won't answer them. Thank you. Mr. Pierce? Yes, Your Honor. Let me ask you that. How does a contract for the sale of real property survive the closing? Just as you suggested, Your Honor, if there's some sort of agreement or other mechanism that continues something past settlement. And you said other, just now I heard Your Honor say the parties come to. It's a very, and it has to be very clear because the general principle is that the transfer of the deed and the transfer of the money ends the sale for real property. And I read this contract. This is for the sale of 2.14 fee simple property. And then they talk about the purchase price, and the purchase price was paid. If it wasn't paid, it wasn't objected to. And it was objected to, Your Honor. That's my point. Mr. Hanbeck refused to go to closing. Then he objected at closing over and over again, and it led to this court action in 2004. Did he refuse the money? What's that, Your Honor? Did he refuse the money? He only had the $10,000 deposit until he was forced to closing by the trial court. You're permitted to be under the contract. They are permitted to force you to closing. At closing, did he refuse the money? Your client? No, Your Honor. Well, let me ask you. You come back all these years later, and you're not even fighting about the 2.14 acres.  Bonus density, Your Honor. I've never heard of that term until your papers. But this is development on related lands, because somehow there's a causation in development. I mean, it really is. I must say, it comes out of... Your Honor, the concept was foreign to me until I learned about it from the county planner, who explained that... I understand, but the contract is for the sale of 2.14 acres. Absolutely. And that 2.14 acres had a purchase price. And if you are arguing the purchase price was illegally forced on you, then you probably should have appealed back then or done something back then you tried. But regardless, you've got the money now. The deed was conveyed. The problem now is that there's contiguous property on which some further developments are. And you're saying, oh, this land was instrumental in those. But that doesn't have anything to do with the purchase price on this property, 2.14 acres. I think it does, Your Honor, because I think it's based on what they could get approved using the land. That's not the contract. The contract is what can you... First of all, the conditions of settlement included the specific notion that a change in zoning or use of the property shall be imposed by the jurisdiction. The property throughout the court, the state court, the Supreme Court, everybody's referring to the property, 2.14 acres. Yes, Your Honor. They have some contiguous land where they've put houses on. You can't get compensation for that. The only reason why they could build houses on that land is because they took my client's land and gave it to the city in exchange. So that's the deal they made. I mean, you get developers assembling properties. You know, Columbia, Maryland was assembled by the Rouse Company. They bought properties everywhere. And then they went to the county fathers and made arrangements and deals. But that doesn't mean the sale of a particular parcel. The seller gets the benefit of all the other development. I don't disagree with that, Your Honor, but I think the distinctive characteristic to this case, and I even heard you say it at the end of Mr. Maine's argument, was absent some sort of other agreement or something that says closing isn't the end-all, be-all. And I think we have that here. Well, tell me. Show me the language. And that's the 2004 decree. This agreement survives closing. That's what you have to have, and they're almost that explicit. Now, show it to me in the contract. Your Honor, it's not in the contract. It's the 2004 decree that contemplates this payment based on the subdivision plans being approved because the condition of settlement under the contract was that the city had to have imposed some sort of rezoning. It hadn't done that. And Judge Klein said, I'm sitting in equity. But that means generally, set aside the court interference, that means generally that one party whose favor the condition was didn't have to go to settlement, if that's right. Absolutely. My argument would be that that order, the 2004 decree, is what leaves open this door. It says whatever the handback land permits to be built, permits meaning allows to, that he should be compensated for in the future. And he never has been compensated for that. And I see my time's up. Thank you, Your Honor. All right. Thank you. We'll come down and agree counsel and take a short recess. The Sovereign Moot Court will take a short recess.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Max O. Cogburn Jr.